IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

JOANN BRYANT,                          *

    Plaintiff,                     *

vs.                                    *

                                    CASE NO. 4:18-CV-106 (CDL)

HARRIS COUNTY, GEORGIA, *et al.*, *

    Defendants.                    *

_____

O R D E R

    Larry Wayne Burden, Jr. was an inmate at the Harris County Prison. On November 5, 2015, Burden collapsed while playing basketball in the prison yard. His mother, who brings this action for his wrongful death, alleges that Burden collapsed because he had been "struck and severely beaten by a guard" earlier in the day. Am. Compl. ¶ 28, ECF No. 1-41. She further alleges that the corrections officers did not provide prompt aid to Burden after they learned he collapsed. Prison staff members ultimately attempted CPR and called emergency medical personnel to take Burden to the hospital, but Burden was pronounced dead on arrival at the hospital. Plaintiff asserts her claims pursuant to 42 U.S.C. § 1983, alleging that Defendants deprived Burden of his rights guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution. She also asserts various state law claims.

Presently pending before the Court are Defendants' motions to dismiss. The Corrections Officer Defendants and Harris County collectively filed a motion to dismiss (ECF No. 5). That motion is granted as to Harris County but denied as to the corrections officers. The warden of the prison, Alex Haden, and the Georgia Department of Corrections filed separate motions to dismiss. Haden's motion (ECF No. 6) is granted. GDOC's motion (ECF No. 8) is granted as to Plaintiff's § 1983 claims but denied as to Plaintiff's state law claims based on the alleged delay in providing medical care.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l*

*Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

Plaintiff alleges the following facts in support of her claims. The Court must accept these allegations as true for purposes of the pending motions.

Burden was an inmate at the Harris County Prison, which was under the supervision and control of the Georgia Department of Corrections ("GDOC"). Am. Compl. ¶ 26. On November 5, 2015, Burden was "struck and severely beaten" by a "guard on duty that day" who "goes by the nickname 'McGoo' or something similar." *Id.* ¶¶ 28, 46. The beating was "intentional, willful and malicious," and it ultimately caused Burden to collapse and die while playing basketball a short time later. *Id.* ¶¶ 28-29. The corrections officers on duty that day were Defendants Crystal Gail Garren, Daniel Levar Maddox, Donald E. Walker, Jeremy Brian McDowell, Noel Matthews Flowers, Troy Allan Moore, and Donald Barber ("Corrections Officer Defendants"). *Id.* ¶ 27. According to the Complaint, one of these Corrections Officer Defendants beat Burden, using "force that was clearly excessive and was objectively unreasonable." *Id.* ¶ 109; *accord id.* ¶¶ 45, 48. The "beating was in direct violation of prison policy and was intentional, willful and malicious, with the specific intent to harm" Burden. *Id.* ¶ 28. The other Corrections Officer

3

Defendants, by their acts or omissions, permitted the guard to attack Burden. *Id.* ¶ 46.

Although Burden had a black eye and lacerations on his face and hands after the beating, he nevertheless went to play basketball in the prison yard. While playing basketball, Burden collapsed. Corrections officers, including Defendants Barber and Moore who were in the control room, did not respond until sometime after other inmates "began banging on the yard window." *Id.* ¶ 31. Defendants Maddox, McDowell, Flowers, and Garren responded "after an unreasonable delay." *Id.* ¶ 34. Burden was eventually taken to a hospital, where he was pronounced dead on arrival. At Burden's funeral, several inmates told his mother "that her son was killed by a prison guard." *Id.* ¶ 48.

## DISCUSSION

Plaintiff asserts the following claims:

(1) Counts I, II, and III: individual capacity and official capacity claims against Haden and the Corrections Officer Defendants for "negligent performance of ministerial acts" and "malicious and/or intentionally harmful misconduct" based on the alleged excessive force used against Burden and the alleged failure to provide timely medical care to Burden.[1]

(2) Counts IV and V: claims for negligence and wrongful death against GDOC based on the alleged excessive force used against Burden and the alleged failure to provide timely medical care to Burden.

---

[1] Plaintiff alleges that these Defendants were negligent in six different ways or engaged in six types of misconduct, but they boil down to (1) using or allowing the use of excessive force against Burden and (2) failing to provide timely medical care to Burden.

(3) Count VI: claim for wrongful death against Harris County based on the alleged excessive force used against Burden and the alleged failure to provide timely medical care to Burden.

(4) Count VII: claim for negligent hiring and retention against GDOC or, in the alternative, against Harris County.

(5) Count VIII: 42 U.S.C. § 1983 claims against all Defendants based on the alleged excessive force used against Burden and the alleged failure to provide timely medical care to Burden.

Defendants seek dismissal of all of Plaintiff's claims.

The Court will analyze Plaintiff's claims in the following order: (1) Plaintiff's individual capacity claims against the Corrections Officer Defendants; (2) Plaintiff's individual capacity claims against Haden; (3) Plaintiff's claims against Harris County, including her § 1983 official capacity claims against the Corrections Officer Defendants and Haden, which are considered claims against their employer, Harris County, *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985); and (4) Plaintiff's claims against GDOC, including her § 1983 official capacity claims against the Corrections Officer Defendants and Haden to the extent those claims should be considered claims against GDOC.

## I. Individual Capacity Claims Against Corrections Officer Defendants

The Corrections Officer Defendants assert that they are entitled to qualified immunity on Plaintiff's § 1983 claims. "Qualified immunity protects government officials performing

discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)). When properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). If a plaintiff's allegations do not "state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quoting *Marsh v. Butler Cty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc)), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010) (rejecting application of a heightened pleading standard in § 1983 cases). In deciding whether to grant qualified immunity on a motion to dismiss, the Court must accept "the factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009) (quoting *Dalrymple*, 334 F.3d at 994).

"A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his

discretionary authority when he took the allegedly unconstitutional action." *Gates*, 884 F.3d at 1297. If the defendant makes this showing, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.*

A. <u>Were the Corrections Officer Defendants Engaged in Discretionary Functions?</u>

In this case, Plaintiff contends that one or more of the Corrections Officer Defendants, acting under color of state law, (1) used excessive force on an inmate and (2) failed to seek timely medical attention for an inmate with an obvious and serious medical need. Plaintiff argues that at this pleading stage these functions should be considered ministerial, not discretionary. But the Eleventh Circuit has noted that "for purposes of qualified immunity, a governmental actor engaged in purely ministerial activities can nevertheless be performing a discretionary function." *Holloman* ex rel. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

"Instead of focusing on whether the acts in question involved the exercise of actual discretion," the Court must "assess whether they are of a type that fell within the

employee's job responsibilities." *Id.* To make this assessment, the Court asks "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* The Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266 (noting that in considering whether a police officer may assert qualified immunity against a Fourth Amendment claim, the court does "not ask whether he has the right to engage in *unconstitutional* searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities"). "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description." *Id.*

If the official was "engaged in a legitimate job-related function," then the Court must determine whether he executed that function in an authorized manner. *Id.* "The primary purpose of the qualified immunity doctrine is to allow government employees to enjoy a degree of protection only when

exercising powers that legitimately form a part of their jobs." *Id.* at 1266-67 (concluding that a principal acted within his discretionary authority when he paddled a student to enforce discipline); *cf. Estate of Cummings v. Davenport*, No. 17-13999, 2018 WL 4705723, at *4 (11th Cir. Oct. 2, 2018) (finding that a prison warden does *not* have authority "to enter a do-not-resuscitate order or to order the withdrawal of artificial life support on behalf of a dying inmate"). If the challenged action was within the scope of the official's authority, then this prong of the discretionary function test is met.

Under this standard, the Corrections Officer Defendants were engaged in discretionary functions when they took the challenged actions in this case. Supervising inmates and deciding when to seek medical attention for inmates are legitimate job functions of a corrections officer, and the challenged actions alleged in the Complaint were within the scope of the corrections officers' authority. Likewise, corrections officers are permitted to use force against inmates under certain circumstances, such as to maintain and restore order in the prison. For these reasons, the Court concludes that the Corrections Officer Defendants were engaged in discretionary functions when they took the challenged actions.

<u>B.</u>   <u>Did Plaintiff Allege that the Corrections Officer</u>
<u>Defendants Violated Clearly Established Law?</u>

The next question is whether Plaintiff sufficiently alleged
that the Corrections Officer Defendants violated clearly
established law.

*1.   Plaintiff's Excessive Force Claim*

Plaintiff alleges that one of the Corrections Officer
Defendants severely beat Burden, that the force was objectively
unreasonable under the circumstances, and that Burden ultimately
died from the injuries inflicted by the Corrections Officer
Defendant.  It was clearly established by November 2015 that the
Eighth Amendment's ban on cruel and unusual punishment prohibits
use of force that amounts to an "unnecessary and wanton
infliction of pain."[2]  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)
(quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  While a
prison guard may use force against an inmate "in a good faith
effort to maintain or restore discipline," he may not use force
"maliciously and sadistically to cause harm." *Skrtich v.
Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley*,

---

[2] The Complaint invokes the Eighth Amendment and does not allege that
Burden was a pretrial detainee who was held at the Harris County
Prison.  The Court assumes that he was a convicted prisoner and that
the Eighth Amendment applies.  Even if Burden was a pretrial detainee
and claims involving his treatment are governed by the Fourteenth
Amendment's Due Process Clause instead of the Eighth Amendment's Cruel
and Unusual Punishment Clause, it was still clearly established by
November 2015 that a jailer could not use objectively unreasonable
force against a pretrial detainee—much less use force that amounts to
an unnecessary and wanton infliction of pain.  *See Kingsley v.
Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015).

475 U.S. at 320-21)).  Qualified immunity is not appropriate if, viewing the facts in the light most favorable to the plaintiff, no reasonable officer could plausibly have concluded that the force used was permissible under the circumstances.  *Id.* at 1300-01.

Plaintiff did not allege the circumstances surrounding her son's beating with much specificity.  Other than the allegation that Burden was beaten, Plaintiff's allegations are arguably limited to legal conclusions as opposed to factual allegations. Ideally, the Court must examine factual allegations and determine whether those allegations, which are assumed to be true, establish a violation of clearly established law.  In the excessive force context, which is inherently fact-intensive, the Court must determine whether the alleged facts establish that the force used had no legitimate penological purpose. Plaintiff's allegations in this regard are purely conclusory. She did not even identify the officer who administered the beating.  Here is the dilemma:  Plaintiff was not present; her son is dead and cannot tell her what happened; and the Corrections Officer Defendants have no incentive to volunteer what actually happened.  Although qualified immunity is designed to protect government officials from the burden of discovery, this case presents a situation where the qualified immunity decision should be deferred until Plaintiff is permitted to

engage in limited discovery to learn what happened. After that discovery is completed, the Corrections Officer Defendants may renew their qualified immunity defenses at summary judgment. The parties shall present the Court with a scheduling order that allows this limited discovery to be completed and an appropriate summary judgment motion filed.

The Court recognizes that the Eleventh Circuit has disapproved of deferring qualified immunity decisions pending discovery given that "immunity is a right not to be subjected to litigation beyond the point at which immunity is asserted." *Howe v. City of Enterprise*, 861 F.3d 1300, 1302 (11th Cir. 2017) (per curiam) (vacating district court's order for the parties to confer on a Rule 26(f) report prior to a ruling on the qualified immunity defense). In *Howe*, unlike in this case, the plaintiff was present when the officers engaged in allegedly unconstitutional conduct, and his complaint contained extensive details about the events giving rise to his action. *See generally Howe v. City of Enterprise*, Am. Compl. (Apr. 21, 2015), ECF No. 18 in M.D. Ala. 1:15-cv-113. Here, Plaintiff's "access to information has been limited," and she alleges, "in good faith, upon information and belief," that a corrections officer beat her son so severely that he died. Am. Compl. ¶¶ 4, 28. These allegations raise a reasonable expectation that limited discovery will reveal evidence of (1) which, if any,

Corrections Officer Defendant beat Burden; (2) the circumstances surrounding the beating; and (3) which, if any, Corrections Officer Defendant witnessed the beating. The qualified immunity decision in this case is deferred until Plaintiff can obtain this information.

For the same reasons, the Court defers ruling on whether the Corrections Officer Defendants are entitled to official immunity on any state law claims arising out of the alleged use of excessive force against Burden. *See Grammens v. Dollar*, 697 S.E.2d 775, 777 (Ga. 2010) (explaining that a public officer "may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure" (quoting *Cameron v. Lang*, 549 S.E.2d 341, 344 (Ga. 2001)).[3]

### 2. *Plaintiff's Serious Medical Need Claim*

Plaintiff alleges that the Corrections Officer Defendants' were deliberately indifferent to Burden's serious medical need and that he died as a result. It was clearly established by 2015 that a prison guard violates the Eighth Amendment if he is deliberately indifferent to the serious medical needs of a prisoner by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prove

---

[3] Plaintiff's Amended Complaint summarily alleges that one or more of the remaining Corrections Officer Defendants was in a position to intervene in his colleague's use of force against Burden but failed to do so, in violation of clearly established law. The Court finds that a decision on qualified immunity regarding these claims should also be deferred until limited discovery can be conducted.

such a claim, the plaintiff must first show that the prisoner had an objectively serious medical need—"one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). Next, the plaintiff must show that the defendant had a subjective knowledge of a risk of serious harm but disregarded that risk by conduct that is more than gross negligence. *Id.* at 1327. Finally, there must be a causal connection between the deliberate indifference and the prisoner's injury. *Id.*

Here, Plaintiff asserts that the Corrections Officer Defendants were deliberately indifferent to Burden's serious medical need because they knew that Burden collapsed on the basketball court but did not seek timely medical treatment for him. Plaintiff further alleges, in conclusory fashion, that Burden died because the Corrections Officer Defendants did not seek timely medical treatment for Burden. The Corrections Officer Defendants do not appear to dispute that Burden had an objectively serious medical need when he collapsed on the basketball court. The question whether an officer was deliberately indifferent to a serious medical need is, like the question whether an officer used excessive force, inherently fact-specific. Plaintiff generally alleges that once the

Corrections Officer Defendants became aware that Burden had collapsed, they either did nothing or they waited to respond. These allegations raise a reasonable expectation that limited discovery will reveal evidence of (1) which, if any, Corrections Officer Defendants knew that Burden had a serious medical need and (2) how each Corrections Officer Defendant responded after learning of Burden's serious medical need. Therefore, as with Plaintiff's excessive force claims, the Court finds that it should defer ruling on the qualified immunity issue until after Plaintiff has a chance to engage in limited discovery to discover what happened. After that discovery is completed, the Corrections Officer Defendants may renew their qualified immunity defenses at summary judgment. The parties shall present the Court with a scheduling order that allows this limited discovery to be completed and an appropriate summary judgment motion filed.

## II. Claims Against Warden Alex Haden

Plaintiff brought official capacity and individual capacity § 1983 claims against Defendant Alex Haden, who was the warden of Harris County Prison on November 5, 2015. The official capacity claims against Haden are considered claims against his employer, Harris County. *Graham*, 473 U.S. at 165. Plaintiff's claims against Harris County are discussed in Section III below. Plaintiff also alleges that Haden is an agent of GDOC, a Georgia

agency.    To  the  extent  Plaintiff's  official  capacity  claims
against  Haden  should  be  considered  claims  against  GDOC  based  on
this  allegation,  Plaintiff's  claims  against  GDOC  are  addressed
in  Section  IV.    In  this  section,  the  Court  focuses  on
Plaintiff's  individual  capacity  claims  against  Haden.

Supervisory  officials  like  Haden  "are  not  liable  under
§ 1983  for  the  unconstitutional  acts  of  their  subordinates  on
the  basis  of  respondeat  superior  or  vicarious  liability."
*Cottone*,  326  F.3d  at  1360  (quoting  *Hartley v. Parnell*,  193  F.3d
1263,  1269  (11th  Cir.  1999)).    "Instead,  supervisory  liability
under  § 1983  occurs  either  when  the  supervisor  personally
participates  in  the  alleged  unconstitutional  conduct  or  when
there  is  a  causal  connection  between  the  actions  of  a
supervising  official  and  the  alleged  constitutional
deprivation."    *Id.*    "The  necessary  causal  connection  can  be
established  'when  a  history  of  widespread  abuse  puts  the
responsible  supervisor  on  notice  of  the  need  to  correct  the
alleged  deprivation,  and  he  fails  to  do  so.'"    *Id.* (quoting
*Gonzalez v. Reno*,  325  F.3d  1228,  1234  (11th  Cir.  2003)).
"Alternatively,  the  causal  connection  may  be  established  when  a
supervisor's  'custom  or  policy  . . .  result[s]  in  deliberate
indifference  to  constitutional  rights'  or  when  facts  support  'an
inference  that  the  supervisor  directed  the  subordinates  to  act
unlawfully  or  knew  that  the  subordinates  would  act  unlawfully

and failed to stop them from doing so.'" *Id.* (quoting *Gonzalez*, 325 F.3d at 1234-35) (alterations in original).

Plaintiff's § 1983 claims against Haden are based on the alleged excessive force used against Burden and the alleged failure to provide timely medical care to Burden. Plaintiff does not allege any facts to suggest that Haden, the prison warden, was personally involved in the beating of Burden. Rather, she alleges that a "guard on duty" beat Burden. Am. Compl. ¶ 28. And, Plaintiff does not allege facts to suggest that Haden was personally involved in the failure to provide Burden medical care. Instead, she alleges that Defendants Barber and Moore knew that Burden collapsed but failed to respond and that Defendants Maddox, McDowell, Garren, and Flowers knew that Burden collapsed but waited an unreasonable amount of time before responding. *Id.* ¶¶ 31, 34.[4]

Plaintiff also does not assert that the Corrections Officer Defendants used excessive force against Burden or unreasonably delayed his medical treatment pursuant to an official Harris

---

[4] In several paragraphs summarizing the basis for Plaintiff's claims, Plaintiff's Amended Complaint lumps Haden in with the Corrections Officer Defendants and makes several general allegations against all of these Defendants together. Am. Compl. ¶¶ 46-47. But these general allegations do not add to the facts set forth in the specific allegations about who was involved in the incidents giving rise to this action, and they do not plead alternative facts. To the extent that Plaintiff asserts that her general allegations lumping Haden in with the other Defendants are enough to establish that Haden was personally involved in the beating of Burden or in the response to his collapse, the Court rejects that argument.

County Prison policy. In fact, she alleges that the correctional officers' challenged actions were in "direct violation of prison policy." Am. Compl. ¶¶ 28, 33. And, Plaintiff does not allege that Haden directed any of the Corrections Officer Defendants to commit constitutional violations.

Plaintiff does summarily allege that Harris County had "a custom or policy of providing inadequate safety and medical care to inmates." Am. Compl. ¶ 113. But she makes no factual allegations in support of this claim. Plaintiff does not allege that any of the Corrections Officer Defendants "had any past history, or even one prior incident" of using excessive, unjustified force against an inmate or of unreasonably delaying their response to an inmate with a serious medical need—much less that Haden knew of a history of widespread abuse but failed to correct it. *Cottone*, 326 F.3d at 1361. Therefore, Plaintiff did not allege any facts to establish the necessary causal connection between Haden and the alleged unconstitutional conduct and has thus failed to meet the rigorous standard for imposing supervisory liability against Haden under § 1983. *See Cottone*, 326 F.3d at 1361-62 (concluding that district court erred in failing to grant supervisory defendants' motion to dismiss where the plaintiff did not allege "any affirmative custom or policy" that played a role in the inmate's death and

also did not allege that the supervisors had knowledge of the subordinate officers' "unconstitutional conduct so as to put the supervisors on notice of the need to correct or to stop" it). Therefore, Plaintiff's § 1983 claim against Haden fails.

Haden is also entitled to dismissal of Plaintiff's state law claims against him. Given the lack of allegations regarding a causal connection between Haden and the alleged unlawful conduct of the prison employees, the Court concludes that there are no factual allegations to suggest that Haden acted with actual malice or actual intent to cause injury in the performance of the discretionary functions of running the prison and supervising the corrections officers.[5] He is therefore entitled to official immunity on Plaintiff's state law claims against him.

## III. Claims Against Harris County

### A.   Section 1983 Claims

A county can be sued under § 1983 for damages caused by a constitutional violation only if the county's policy or custom was the moving force behind the constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

---

[5] Plaintiff argues that these functions are ministerial rather than discretionary and that official immunity thus does not apply. But the operation of a county correctional institution, including the establishment of policies and decisions regarding the degree of training and supervision for corrections officers, is a discretionary function. *See, e.g., Bontwell v. Dep't of Corrs.*, 486 S.E.2d 917, 922 (Ga. Ct. App. 1997).

Again, Plaintiff does not assert that corrections officers used excessive force against Burden or unreasonably delayed his medical treatment pursuant to an official Harris County Prison policy. Rather, she alleges that the corrections officers' challenged actions were in "direct violation of prison policy." Am. Compl. ¶¶ 28, 33. Plaintiff seems to contend that Haden, acting as a final policymaker for Harris County, established a policy or custom of providing inadequate safety and medical care. But, as discussed above, Plaintiff did not make sufficient factual allegations to support such a claim. Plaintiff did not allege any affirmative prison custom or policy that played a role in Burden's death. She also did not allege facts to suggest "such 'a longstanding and widespread practice [that it] is deemed authorized by'" Haden because he "must have known about it but failed to stop it." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). For these reasons, Plaintiff's Amended Complaint does not state a § 1983 claim against Harris County.

### B.    State Law Claims

Harris County argues that it is entitled to sovereign immunity on Plaintiff's state law claims. The Georgia constitution provides that "sovereign immunity extends to the state and all of its departments and agencies" except to the

extent the legislature enacts a specific waiver. Ga. Const. art. I, § 2, ¶ IX(e). This sovereign immunity extends to counties. *Gilbert v. Richardson*, 452 S.E.2d 476, 479 (Ga. 1994). Sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. art. I, § 2, ¶ IX(e); *accord* O.C.G.A. § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute."). Although the Georgia Tort Claims Act provides a limited waiver of sovereign immunity "for the torts of state officers and employees while acting within the scope of their official duties or employment" (subject to certain exceptions), that waiver does not apply to counties. *Currid v. DeKalb State Court Prob. Dep't*, 674 S.E.2d 894, 897 (Ga. 2009); *accord* O.C.G.A. § 50-21-22(5) (stating that the term "state" used in the Georgia Tort Claims Act "does not include counties").

Plaintiff did not point to any applicable statutory exceptions to state sovereign immunity. Plaintiff nonetheless contends that a county can be held liable for the acts of its employees in their official capacities. In support of this argument, Plaintiff relies on *Ward v. Dodson*, 569 S.E.2d 554 (Ga. Ct. App. 2002) and O.C.G.A. § 33-24-51(b). *Ward* was an action against a sheriff's deputy based on a car crash that occurred during a police chase, and O.C.G.A. § 33-24-51(b)

provides that county sovereign immunity is waived in cases arising from the negligent use of a motor vehicle to the extent of the county's liability insurance coverage.[6]  This authority does not establish an express waiver of state sovereign immunity for the claims at issue in this case.  Without such a waiver, Harris County is entitled to sovereign immunity on Plaintiff's state law claims.

## IV.   Claims Against Georgia Department of Corrections

### A.   Section 1983 Claims

Plaintiff asserts § 1983 claims against GDOC based on the alleged excessive force used against Burden and the alleged failure to provide timely medical care to Burden.  GDOC argues that even if the Court assumes for purposes of the motion to dismiss that the Harris County Prison officials were state employees, GDOC is entitled to Eleventh Amendment immunity on Plaintiff's § 1983 claims.

---

[6] Plaintiff also relies on this Court's decision in *Robinson v. Smith*, No. 4:14-CV-149 CDL, 2015 WL 4193269 (M.D. Ga. July 10, 2015).  That case against a county school district arose from the alleged abuse of a student with disabilities while at school.  The plaintiffs brought claims under various federal laws and also asserted state law claims.  The plaintiffs did not name the county school district in their complaint.  When one of the individual defendants filed a motion to dismiss the claims against her, there was some confusion about what claims the plaintiffs were asserting against whom, and the Court construed the plaintiffs' official capacity claims against the individual defendants as claims against the county school district and deemed the plaintiffs' complaint to be amended accordingly.  The order only addressed whether the individual capacity claims against one individual defendant should be dismissed and did *not* evaluate whether the claims against the county school district claims should be dismissed based on state law sovereign immunity.

The Eleventh Amendment to the United States Constitution bars damages actions by private individuals in federal court against a state and its agencies unless the state waives the immunity or Congress validly abrogated the immunity. *E.g., Graham*, 473 U.S. at 169. GDOC is an agency of Georgia. *See Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) (finding that the Eleventh Amendment barred a 42 U.S.C. § 1988 claim for attorney's fees against GDOC). "Congress has not abrogated Eleventh Amendment immunity in § 1983 cases." *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (per curiam). And, Georgia has not waived its Eleventh Amendment immunity with regard to the § 1983 claims in this action. *See* Ga. Const. art. I, § 2, ¶ IX(f) (stating that Georgia's limited waiver of sovereign immunity through the Georgia Tort Claims Act is not a waiver of any immunity provided to Georgia by the U.S. Constitution). Therefore, Plaintiff's § 1983 claims against GDOC are dismissed based on Eleventh Amendment immunity.

B.   <u>State Law Claims</u>

Plaintiff asserts state law negligence and wrongful death claims against GDOC based on the Harris County Prison officials' alleged use of excessive force against Burden and the alleged failure to provide timely medical care to Burden. Plaintiff also asserts a negligent hiring and retention claim against GDOC based on these acts and omissions. GDOC argues that it is

entitled to state law sovereign immunity on these claims. As discussed below, the GDOC is entitled to state law sovereign immunity for Plaintiff's claims arising from the use of force against Burden but not for Plaintiff's claims arising from the alleged delay in medical treatment.

Under the Georgia Constitution, "sovereign immunity extends to the state and all of its departments and agencies" except to the extent the legislature enacts a specific waiver. Ga. Const. art. I, § 2, ¶ IX(e). By enacting the Georgia Tort Claims Act, Georgia waived "its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances," subject to certain exceptions. O.C.G.A. § 50-21-23(a).

GDOC argues that the Corrections Officer Defendants were not state employees because they were employed by Harris County, not GDOC. In support of this argument, GDOC points to an intergovernmental agreement between Harris County and GDOC. Plaintiff did not attach the agreement to her Complaint, so the Court may only consider the document without converting GDOC's motion to dismiss into one for summary judgment if it is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The agreement

is neither central to Plaintiff's claims nor undisputed, so the Court may not consider it at this stage of the litigation. Plaintiff alleges that the Corrections Officer Defendants were agents of GDOC. The Court accepts this allegation as true for purposes of the pending motion.

GDOC argues that even if the Corrections Officer Defendants are considered GDOC agents for purposes of the motion to dismiss, Plaintiff's claims are barred by the "assault and battery" exception to Georgia's waiver of sovereign immunity: Georgia did not waive its sovereign immunity "for losses *resulting from*" assault or battery. O.C.G.A. § 50-21-24(7) (emphasis added). If Plaintiff's claims were based solely on a guard's use of excessive force against Burden, her claims would clearly be barred by the assault and battery exception to the waiver of sovereign immunity. But that is not the end of the inquiry because Plaintiff claims that there was a second cause of Burden's death: the Corrections Officer Defendants' alleged decision to wait an unreasonable amount of time before responding to Burden's collapse, in violation of prison policy.

GDOC argues that the Court should not consider the second alleged cause because Plaintiff did not submit an affidavit to establish causation and did not make any specific allegations to support her claim that the Corrections Officer Defendants' alleged delay was a proximate cause of Burden's death. But

Plaintiff was not required to submit an affidavit to survive GDOC's motion to dismiss.[7] And, taking the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, as the Court must do at this stage in the litigation, the Court finds that Plaintiff adequately alleged that the delay was a proximate cause of Burden's death. The next question is whether Plaintiff's claim against GDOC is nonetheless barred by sovereign immunity.

GDOC argues that even if Plaintiff adequately alleged that the delay in providing treatment was a proximate cause of Burden's death, GDOC is still entitled to sovereign immunity under the assault and battery exception to waiver. In support of this argument, GDOC relies on cases where a state employee acted negligently and then a non-state actor committed a battery that caused a loss; in these cases, the assault and battery exception applied. *See, e.g., Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd.*, 545 S.E.2d 875, 878 (Ga. 2001) (applying assault and battery exception where a public agency negligently placed a disabled woman in a group home and then the couple that ran the group home beat her); *Southerland v. Georgia Dep't of Corr.*, 666 S.E.2d 383, 385 (Ga. Ct. App. 2008) (applying assault

---

[7] GDOC did not cite any authority in support of its argument that Plaintiff should have submitted an affidavit. Georgia law requires an expert affidavit to be filed with complaints in actions alleging professional malpractice. O.C.G.A. § 9-11-9.1. This is not such a case. Furthermore, GDOC did not raise this argument until its reply brief, so it is not properly before the Court.

and battery exception where prison officials failed to follow prison classification and housing procedures and then an inmate was beaten to death by his cellmate); *Dep't of Human Res. v. Hutchinson*, 456 S.E.2d 642, 644 (Ga. Ct. App. 1995) (applying assault and battery exception where a public agency negligently placed a foster child in a home and then the foster child found his foster mother's gun and shot her with it). In each of these cases, the government's act "produced no loss" and the non-state actor's battery did. *Hutchinson*, 456 S.E.2d at 644. These cases are all distinguishable from this action.

The Georgia Supreme Court rejected the argument that "as long as any one of the causes connected to a plaintiff's loss is a cause for which the State would be immune from suit, the State would always be immune from any suit stemming from such loss." *Georgia Dep't of Transp. v. Heller*, 674 S.E.2d 914, 917 (Ga. 2009). Instead, if the latter event that led to the loss "was something for which the State was not entitled to the protection of sovereign immunity," then the State is not entitled to sovereign immunity. *Id.* In *Heller*, a taxicab's passenger was killed when her taxi spun out of control and hit a tree. There was evidence that a non-state actor, a taxi inspector, inadequately inspected the tires and negligently failed to issue a "do not operate" citation. But there was also evidence that the Georgia Department of Transportation violated generally

accepted engineering standards for maintaining a proper clear zone along the highway. The Georgia Supreme Court found that the DOT's failure was a "second event leading to the loss" that did "not fall within any exception to the State's waiver of sovereign immunity," and that the State thus "waived its sovereign immunity in connection with the wreck that caused the passenger's death. *Id.* at 917.

As in *Heller*, Plaintiff alleged two events leading to Burden's death. The first, a beating inflicted on Burden, falls within the battery exception to the waiver of sovereign immunity. But the second event—failure to follow prison procedures for responding to an inmate with a serious medical need—does not. GDOC did not argue that any other exception to the waiver of sovereign immunity applies. Thus, based on the present record, GDOC is not entitled to sovereign immunity based on the assault and battery exception to waiver.

GDOC argues that even if it is not entitled to sovereign immunity based on the assault and battery exception to waiver, Plaintiff's claim fails because Plaintiff did not provide adequate ante litem notice of her claims against GDOC. As discussed above, "sovereign immunity extends to the state and all of its departments and agencies" except to the extent the legislature enacts a specific waiver. Ga. Const. art. I, § 2, ¶ IX(e). The Georgia Tort Claims Act waives Georgia's sovereign

immunity for torts of state employees while acting in the scope of their employment. O.C.G.A. § 50-21-23(a). But, no action against Georgia under the Georgia Tort Claims Act "shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state as provided in this subsection." O.C.G.A. § 50-21-26(a)(3).

An ante litem notice "shall state, to the extent of the claimant's knowledge and belief and as may be practicable under the circumstances, the following:"

> (A) The name of the state government entity, the acts or omissions of which are asserted as the basis of the claim;
>
> (B) The time of the transaction or occurrence out of which the loss arose;
>
> (C) The place of the transaction or occurrence;
>
> (D) The nature of the loss suffered;
>
> (E) The amount of the loss claimed; and
>
> (F) The acts or omissions which caused the loss.

O.C.G.A. § 50-21-26(a)(5).

The Georgia Tort Claims Act is a limited waiver of Georgia's sovereign immunity, and "a claimant must 'strictly comply with the notice provisions as a prerequisite to filing suit under the [Act], and substantial compliance is not sufficient.'" *Williams v. Wilcox State Prison*, 799 S.E.2d 811, 813 (Ga. Ct. App. 2017) (quoting *Dorn v. Ga. Dep't of Behavioral*

*Health & Developmental Disabilities*, 765 S.E.2d 385, 387 (Ga. Ct. App. 2014)). Although the Georgia courts "have repeatedly emphasized that the rule of strict compliance 'does not demand a hyper-technical construction that would not measurably advance the purpose of the [Act's] notice provisions[,] . . . if the ante-litem notice requirements are not met, then the State does not waive sovereign immunity.'" *Id.* (quoting *Dorn*, 765 S.E.2d at 387). Thus, a complaint that alleges an act or omission causing the loss that is different from the act or omission alleged in the ante litem notice must be dismissed for lack of strict compliance with the Georgia Tort Claims Act's notice requirement. *See, e.g., id.* at 814 (finding that the plaintiff's ante litem notice complaining that GDOC failed to keep the prison bathroom dry or to warn an inmate of a water hazard was not sufficient to put GDOC on notice of the claim in the plaintiff's complaint regarding *uneven* flooring in the bathroom).

Here, the ante litem notice states that Plaintiff is providing notice of claims against the Harris County Prison, GDOC, and their officers and employees. GDOC contends that the ante litem notice does not adequately allege that any *GDOC employees* committed the acts or omissions that led to Burden's death. The ante litem notice alleges that Burden "died as a result of the acts and/or omissions of the [Harris County

P]rison's employees" and that the "Harris County Prison, through its employees, officers, agents and other representatives, was negligent through multiple acts and/or omissions, including . . . failure to adequately provide medical care and treatment." Compl. Ex. B, Ante Litem Notice, ECF No. 1-1 at 32. Plaintiff alleges in her Complaint that the Harris County Prison employees were also agents of the GDOC. If that is true (and the Court must accept the allegation as true at this stage in the litigation), then the ante litem notice provides sufficient notice of Plaintiff's claims against GDOC agents. GDOC's motion to dismiss on this ground is denied.

## CONCLUSION

For the reasons set forth above, the Court grants the motions to dismiss of Harris County and Haden. The Court grants GDOC's motion to dismiss Plaintiff's § 1983 claims but denies the motion as to Plaintiff's state law claims based on the alleged delay in providing medical care. The Court defers ruling on whether the Corrections Officer Defendants are entitled to qualified immunity and denies their motion to dismiss Plaintiff's § 1983 and state law claims for excessive force and deliberate indifference to a serious medical need. Within twenty-eight days of today's Order, the parties shall present the Court with a scheduling order that allows the limited discovery described above to be completed and an

appropriate summary judgment motion filed; that limited discovery may include discovery on who employed the Corrections Officer Defendants.

IT IS SO ORDERED, this 26th day of October, 2018.

S/Clay D. Land

CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA